UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


DEMARLIS MELVIN

     Petitioner,

v.                            CASE NO. 8:13-cv-1201-T-23AEP

SECRETARY, Department of Corrections,

     Respondent.

_____/


## **O R D E R**

     Demarlis Melvin applies for the writ of habeas corpus under 28 U.S.C. § 2254

(Doc. 13) and challenges the validity of his state convictions for first-degree murder

and attempted first-degree murder.  Melvin alleges one ground of trial court error and

six grounds of ineffective assistance of trial counsel.  Numerous exhibits

("Respondent's Exhibit __") support the response.  (Doc. 9)

## **FACTS**[1]

     As Phillip Peterson and Michael Smith walked to a local convenience store,

Melvin and three other people approached in an automobile.  As the automobile

passed, Melvin and Peterson began to argue.  The automobile continued down the

---

[1] This factual summary derives from Melvin's brief on direct appeal and the record.
(Respondent's Exhibits 1, 2)

street but circled back.  Melvin and Peterson again exchanged insults.  Peterson

threw a drink at the automobile, which stopped.  Melvin and another passenger got

out and challenged Peterson to a fight.  When Peterson ran toward him, Melvin and

the other passenger returned to the vehicle and rode away.  A few minutes later,

Melvin returned with a gun and shot at Peterson and Smith.  A bullet went through

Peterson's hat but he was not injured.  Another bullet struck Michael Smith in the

head and killed him.

The police arrested Melvin after witnesses identified him in a photographic

line-up.  An indictment charges Melvin with first-degree murder and attempted

first-degree murder.  After examination by four mental health experts Melvin was

deemed incompetent to stand trial and sent to the Florida State Hospital for

treatment.  Melvin was ultimately restored to competency.  A jury convicted Melvin

of both charges, and he serves life imprisonment.

## I.   EXHAUSTION AND PROCEDURAL BAR

**Ground One**

Melvin contends that, because the prosecutor failed to produce sufficient

evidence of premeditation, the trial judge erred by denying Melvin's motion for a

judgment of acquittal.  When he presented this ground to the state court on direct

appeal, Melvin argued a violation of only state law and did not alert the state court to

a federal constitutional violation.  Even generously interpreting Melvin's federal

application to include a federal due process claim based on the insufficiency of the

evidence, the application fails because the federal claim is unexhausted.

Before a federal court can grant habeas relief, an applicant must exhaust either on direct appeal or in a state post-conviction motion every available state court remedy for challenging his conviction. 28 U.S.C. § 2254(b)(1)(A), (C). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)). To exhaust a claim, an applicant must present the state court with both the particular legal basis for relief and the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement that an applicant exhaust each available state court remedy as a prerequisite to federal review is satisfied if the applicant "fairly presents" his claim in each available state court and alerts the state court to the federal source of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). An applicant can raise a federal claim in state court "by citing in conjunction with

- 3 -

the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). An applicant must "do more than scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1302–03 (11th Cir. 2005) (quotations and citations omitted).

In his direct appeal Melvin argued that the state failed to present sufficient evidence to satisfy the burden of proof under Florida law. (Respondent's Exhibit 2, pp. 11–16) In his state appellate brief Melvin did not cite either a federal case or a federal constitutional provision, and he did not label his claim "federal." *Baldwin*, 541 U.S. at 32. Melvin's reliance on Florida's circumstantial evidence standard, coupled with his failure to assert a federal constitutional claim, did nothing to alert the Florida courts to a federal sufficiency-of-the-evidence claim. As *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 460–61 (11th Cir. 2015), explains:

> For starters, in cases turning on circumstantial evidence, the Florida standard for assessing a sufficiency of the evidence challenge differs greatly from the federal standard. While Florida may apply the *Jackson* standard in resolving an ordinary sufficiency claim, *see, e.g., Melendez v. State*, 498 So. 2d 1258, 1261 (Fla. 1986), a "special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence," or "predicated chiefly upon circumstantial evidence," *Thorp v. State*, 777 So. 2d 385, 389 (Fla. 2000) (*per curiam*) (quotation omitted). It is an age-old rule in Florida that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." *Id.* (quotation omitted); *see, e.g., Lowe v. State*, 90 Fla. 255, 105 So. 829, 830 (1925) (requiring that the evidence be "irreconcilable with any reasonable theory of [the defendant's]

innocence and exclude to a moral certainty every hypothesis but that of his guilt").

It is precisely the Florida rule, however, that the Supreme Court has rejected as a matter of federal law. In *Jackson*, the case upon which Preston rests his entire sufficiency of the evidence challenge, the Court instructed that a petitioner is entitled to relief under the Due Process Clause only if "no rational trier of fact could have found proof of [his] guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324, 99 S. Ct. 2781. Under federal law, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326, 99 S. Ct. 2781. This remains true even when the only evidence relied on is "circumstantial evidence in the record." *Id.* at 324, 99 S. Ct. 2781. Thus, in cases involving circumstantial evidence, whether a defendant raises his sufficiency claim in terms of state or federal law can matter a great deal.

Preston invoked and relied upon Florida's unique rule for convictions based on circumstantial evidence in challenging his conviction. . . . We can safely assume that when the Florida Supreme Court considered Preston's appeal, it did so through the prism of this longstanding state doctrine, rather than federal law. The Florida Supreme Court had no opportunity to even consider federal law, because, as we've explained, Preston never once raised *Jackson*, the *Jackson* standard, any federal cases, the Due Process Clause or any other constitutional provisions, or, indeed, even referenced the word "federal" in his briefing on this claim.

Any federal claim that Preston could have brought would have been judged by a different standard than the state claim he actually did bring.

Melvin's failure to present to the state court a federal due process claim deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. *See also Anderson v. Harless*, 459 U.S. 4, 5–6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.");

*Preston*, 785 F.3d at 460 (noting that "simply mentioning a phrase common to both state and federal law, like 'sufficiency of the evidence,' cannot constitute fairly presenting a federal claim to the state courts").  Consequently, ground one is unexhausted and procedurally defaulted.

"If the [applicant] has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, an applicant "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, an applicant must demonstrate not only that an error at the trial created the possibility of prejudice but that the error worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982).  In other words, an applicant must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892.

Without showing cause and prejudice, an applicant may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a fundamental miscarriage of justice.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986).  A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v.*

*Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet the "fundamental

miscarriage of justice" exception, Melvin must show constitutional error coupled

with "new reliable evidence — whether . . . exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence — that was not

presented at trial."  *Schlup*, 513 U.S. at 324.

Melvin fails to demonstrate cause and prejudice excusing the default of ground

one.  *Carrier*, 477 U.S. at 495–96.  He cannot meet the "fundamental miscarriage of

justice" exception because he presents no "new reliable evidence" that he is actually

innocent.  *Schlup*, 513 U.S. at 327.  Because Melvin satisfies neither exception to

procedural default, ground one is procedurally barred from federal review.

## II.   MERITS

Melvin's six remaining grounds alleging ineffective assistance of trial counsel

are exhausted and entitled to a review on the merits.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding.  *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir.

1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim —

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a
> writ of habeas corpus with respect to claims adjudicated on the
> merits in state court. Under § 2254(d)(1), the writ may issue only
> if one of the following two conditions is satisfied — the state-court
> adjudication resulted in a decision that (1) "was contrary to . . .
> clearly established Federal Law, as determined by the Supreme
> Court of the United States" or (2) "involved an unreasonable
> application of . . . clearly established Federal law, as determined by
> the Supreme Court of the United States." Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court
> arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than
> this Court has on a set of materially indistinguishable facts. Under
> the "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 526

U.S. 86, 103 (2011).  *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It

is the objective reasonableness, not the correctness *per se*, of the state court decision

that we are to decide.").  The phrase "clearly established Federal law" encompasses

only the holdings of the United States Supreme Court "as of the time of the relevant

state-court decision." *Williams*, 529 U.S. at 412.

   The purpose of federal review is not to re-try the state case.  "The [AEDPA]

modified a federal habeas court's role in reviewing state prisoner applications in order

to prevent federal habeas 'retrials' and to ensure that state-court convictions are given

effect to the extent possible under law." *Cone*, 535 U.S. at 693.  A federal court must

afford due deference to a state court's decision.  "AEDPA prevents defendants — and

federal courts — from using federal habeas corpus review as a vehicle to second-guess

the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See

also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult

to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which

demands that state-court decisions be given the benefit of the doubt' . . . .") (citations

omitted).

   In a *per curiam* decision without a written opinion the state appellate court

on direct appeal affirmed Melvin's convictions and sentences.  (Respondent's

Exhibit 4)  In another *per curiam* decision without a written opinion the state appellate

court affirmed the denial of Melvin's Rule 3.850 motion to vacate. (Respondent's

Exhibit 11)  The state appellate court's *per curiam* affirmances warrant deference

under Section 2254(d)(1) because "the summary nature of a state court's decision

does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398.  Melvin bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state court's rejection of Melvin's post-conviction claims warrants deference in this case.

## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Melvin claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas [applicant]s can properly prevail on the ground of

ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d

1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th

Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well
> settled and well documented. In *Strickland v. Washington*, 466 U.S.
> 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court
> set forth a two-part test for analyzing ineffective assistance of
> counsel claims. According to *Strickland*, first, the defendant must
> show that counsel's performance was deficient. This requires
> showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment. Second, the defendant must show that the
> deficient performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable. *Strickland*,
> 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent

prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When

applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two

grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional

judgment." *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Melvin must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  466 U.S. at 691–92.  To meet this burden, Melvin must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690–91.  Melvin cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances;

> we are interested in whether the adversarial process at trial, in
> fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v.*

*United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial

lawyers, in every case, could have done something more or something different.  So,

omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent

or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting

*Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751

(1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Melvin must prove that the state court's

decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States or

(2) . . . based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  Sustaining a claim of ineffective assistance

of counsel is very difficult because "[t]he standards created by *Strickland* and §

2254(d) are both 'highly deferential,' and when the two apply in tandem, review is

'doubly' so."  *Richter*, 526 U.S. at 105.  *See also Pinholster*, 131 S. Ct. at 1410 (stating

that an applicant must overcome this "'doubly deferential' standard of *Strickland* and

the AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)

("Double deference is doubly difficult for a[n] [applicant] to overcome, and it will be

a rare case in which an ineffective assistance of counsel claim that was denied on the

merits in state court is found to merit relief in a federal habeas proceeding.").

**Ground Two**

After several months of mental health treatment at Florida State Hospital, Melvin was deemed competent to proceed to trial. Melvin's counsel moved for a competency hearing and the trial judge granted the motion. The trial judge appointed the court psychologist, Dr. Jill Poorman, to both evaluate Melvin and file a written report of her findings. Melvin's counsel withdrew from the case, and the trial judge appointed conflict counsel, who moved for a pre-trial competency determination based on Dr. Poorman's findings. In his motion counsel specifically noted that he did "not seek live testimony in this regard." (Respondent's Exhibit 1, Vol. I, p. 213) The trial judge subsequently entered a written order — without holding a hearing — finding Melvin "to be competent to proceed based upon relevant reports in the court's file." (Respondent's Exhibit 1, Vol. I, p. 214)

Melvin alleges that after his competency was restored his mental condition deteriorated before trial. He claims that he could comprehend neither the pre-trial proceedings nor the trial. Melvin argues that based on counsel's "knowledge of [Melvin]'s inability to comprehend trial proceedings, coupled with knowledge of [Melvin]'s psychiatric history, there w[ere] reasonable grounds to question [Melvin]'s competency" and that "a second evaluation was necessary to truly establish [his] competency to stand trial." (Doc. 1, pp. 9–10) Melvin contends that his trial counsel rendered ineffective assistance by not moving for a re-evaluation of Melvin's competency before the trial began.

The state post-conviction court's order denying this ground details the procedural history of the competency proceedings leading to trial (Respondent's Exhibit 7, pp. 2–4) (court's record citations omitted):

> The Defendant first alleges that "trial counsel was ineffective for failing to request further competency evaluations." The Defendant alleges that his constitutional right to a fair trial was denied because counsel failed to request that additional experts perform competency evaluations to determine his competency to stand trial. Specifically, the Defendant alleges that counsel was ineffective for failing to seek additional psychological evaluations in order to determine his competency after "Dr. [D']Agostino, Ph.D. at the Florida State Hospital submitted a written report stating defendant was competent to proceed." Therefore, the Defendant contends, counsel was ineffective for failing to obtain additional psychological evaluations to determine his competency to proceed to trial following his return from Florida State Hospital.
>
> In order to address the Defendant's claim, it is necessary to set forth the procedure in this case. The record reflects that on February 7, 2007, counsel for the Defendant . . . filed a motion requesting "psychological/psychiatric testing" to determine the Defendant's competence. On February 26, 2007, the court granted the Defendant's motion. Thereafter, on May 23, 2007, counsel filed a "Motion to Determine Competency to Stand Trial Pursuant to Florida Rules of Criminal Procedure 3.210." On the same date, counsel also filed a "Motion to Establish Mental Retardation to Bar Execution Pursuant to Florida Rules of Criminal Procedure 3.203." On June 22, 2007, the court entered orders appointing professionals to examine the Defendant to determine both his competency to stand trial and to determine whether he suffers from mental retardation as a bar to execution. On September 12, 2007, the court entered an order directing examination of the Defendant for purposes of determining his competence to proceed to trial. Following reports submitted by Drs. Rosen, Greenberg, O'Neal, and Slonin, on September 24, 2007, the court entered an order finding the Defendant incompetent to proceed to trial. Counsel then filed a "Motion to Appoint Expert to Determine Retardation or Autism to Establish Competency to Stand Trial." On January 24, 2008, the court entered an order appointing experts to determine the Defendant's "retardation or autism." On April 15, 2008, the court again entered an order adjudging the Defendant incompetent.

In his motion the Defendant alleges that on August 11, 2008, Dr. D'Agostino of the Florida State Hospital submitted a written report finding the Defendant competent to proceed. Counsel filed a "Motion to Appoint Expert Regarding IQ Testing-Mental Retardation" on September 22, 2008. Counsel filed a "Motion for Hearing to Determine of Competency" on September 24, 2008. The court granted the Defendant's motion on September 25, 2008. On November 20, 2008 the court entered an order appointing the Court Psychologist and directing her to file a written report. On March 17, 2009, counsel filed a motion to withdraw in this case. On April 1, 2009, the Court entered an order granting counsel's Motion to Withdraw and appointing conflict counsel. Thereafter, attorney John Thor White filed a Notice of Appearance in the case and on April 9, 2009 counsel filed a "Motion to Determine Competency." On May 5, 2009, the Court entered an order finding the Defendant competent to proceed.

Having set forth the procedure of the case, the Defendant's claim is without merit. Following the Defendant's return from Florida State Hospital, the court entered an order on November 20, 2008, directing the court psychologist to conduct a preliminary competency evaluation of the Defendant to determine if a full competency evaluation was necessary. Specifically, the "Order for Psychological Evaluation" states:

> The Court finds that the issue of the Defendant's competency must be addressed. It is therefore necessary to appoint the Court Psychologist for the Criminal Division to evaluate the Defendant for the purpose of determining the need for a full competency evaluation and/or to conduct such evaluation.

In other words, the evaluation by Dr. Poorman, the court psychologist, constituted a preliminary screening, only to ascertain the possible existence of a "reasonable ground" that would trigger the full procedure of rule 3.210. However, Dr. Poorman found that the Defendant was competent to proceed and an order reflecting the same was entered on May 5, 2009. Therefore, the Defendant's claim that counsel was ineffective for failing to file a motion to determine his competency is without merit as the Defendant was afforded the full panoply of procedural safeguards relating to his mental health and ability to stand trial. Therefore, counsel cannot be deemed ineffective for failing to file a meritless motion. See *Tuffeteller*, 734 So. 2d at 1009, 1023. Additionally, as the record indicates that he was

competent to proceed to trial, the Defendant's claim is speculative insofar as he alleges that further evaluation would have revealed that he was not competent. Therefore, the Defendant's claim is denied further on the basis that the claim is speculative. *See Bass v. State*, 932 So. 2d 1170, 1172 (Fla. 2d DCA 2006).

Moreover, the Defendant's claim is not appropriately raised in the instant motion. A motion pursuant to rule 3.850 is not a substitute for a direct appeal where the issues raised in the post-conviction motion could have been raised on direct appeal. *See Pedroso v. State*, 420 So. 2d 908 (Fla. 2d DCA 1982). The Defendant is procedurally barred from arguing in a post-conviction motion that he was deprived of a purported right to a competency evaluation by a mental health expert, because that issue could have been raised on direct appeal. *See Rodriguez v. State*, 919 So. 2d 1252 (Fla. 2005). Similarly, the claim that the defendant was in fact incompetent to stand trial is likewise procedurally barred from a post-conviction motion because it should have been raised on direct appeal. *See Patton v. State*, 784 So. 2d 380, 393 (Fla. 2000). Based upon the following, [this ground] is denied.

A defendant is competent to stand trial if he possesses (1) sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and (2) a rational and factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402 (1960); Fla. R. Crim. P. 3.211(a)(1). To establish that counsel rendered ineffective assistance by not investigating or not acting on Melvin's alleged incompetence, Melvin must move either (1) that counsel knew of signs indicating Melvin's incompetence and unreasonably failed to act on them or (2) that counsel unreasonably failed to investigate Melvin's competence. *See Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary . . . . [A] particular decision not to investigate must be directly assessed for reasonableness

in all circumstances, applying a heavy measure of deference to counsel's judgments.").

Melvin does not specifically allege that he was actually incompetent to proceed, only that there existed "reasonable grounds to question [his] competency." (Doc. 1, p. 9) Melvin cannot satisfy *Strickland* with mere speculation or conclusory allegations. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (stating that conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Melvin presents no evidence showing (1) that his trial counsel ignored facts that raise a legitimate doubt about Melvin's competency to stand trial or (2) that a mental illness affected him to the point that he could not understand the proceedings or effectively consult with counsel. *Dusky*, 362 U .S. at 402.

Even assuming that counsel performed deficiently by not further investigating Melvin's competency, Melvin cannot establish resulting prejudice.[2] "In order to

---

[2] Melvin presents in his application no substantive incompetency claim. Even affording the application a generous interpretation and assuming that Melvin does present such a claim, he is not entitled to relief. In advancing a substantive incompetency ground, Melvin "is entitled to no presumption of incompetency and must demonstrate his . . . incompetency by a preponderance of the evidence." *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 481 (11th Cir. 2012). *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992), explains:

> The burden on the petitioner seeking federal habeas relief on the grounds of incompetency is heavy. The standard is: "[c]ourts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner." *Reese v.*

(continued...)

demonstrate prejudice from counsel's failure to investigate his competency, [an applicant] has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (quoting *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988)).  Melvin fails to satisfy this burden.  Consequently, ground two warrants no relief because Melvin fails to establish that the state court either unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts by rejecting this ground.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Three**

Similar to ground two in the federal application, Melvin contends in ground three that his trial counsel rendered ineffective assistance by not requesting an evidentiary hearing specifically under Rule 3.212, Florida Rules of Criminal Procedure, to determine whether upon his return from the Florida State Hospital Melvin's competency was restored.  The state post-conviction court summarily denied this ground in Melvin's Rule 3.850 motion (Respondent's Exhibit 7, pp. 4–5) (court's record citations omitted):

---

[2](...continued)
     *Wainwright*, 600 F.2d 1085, 1091 (5th Cir. 1979) (citing *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973), subsequent opinion, 536 F.2d 1051 (5th Cir. 1976)), *cert. denied*, 444 U.S. 983, 100 S. Ct. 487, 62 L. Ed. 2d 410 (1979).

Melvin fails to cite any objective facts that would positively, unequivocally, and clearly generate a legitimate doubt about his competency during either the pre-trial proceedings or the trial. *Sheley*, 955 F.2d at 1438.

The Defendant next alleges that counsel was ineffective "for failing to petition the court for a proper hearing on the determination of the Defendant being restored to competency." The Defendant alleges that counsel's failure to request a hearing resulted in his being incompetent at the time of trial.

On November 20, 2008, [counsel] filed a motion requesting a hearing on the determination of competency. A hearing was set in the matter on March 24, 2009. However, [counsel] withdrew from the case prior to occurrence of the hearing. On April 9, 2009 attorney Thor White filed a "Motion to Determine Competency." In the motion, counsel stated that he "d[id] not seek live testimony" in the matter. As noted above, court psychologist Dr. Poorman found the Defendant to be competent to stand trial after returning from Florida State Hospital. An order finding the Defendant competent to proceed was entered on May 5, 2009.

Ultimately, the Defendant's claim is similar to [ground two of the federal application] in that he alleges that he was incompetent to stand trial. This claim should have been raised on direct appeal. *See Rodriguez*, 919 So. 2d at 1252. The Defendant cannot couch the instant claim as the deprivation of an opportunity for a competency hearing. Additionally, as the Defendant was found competent to proceed to trial without a hearing, the Defendant merely speculates that such a hearing would have elicited testimony demonstrating his incompetence. [This ground] is denied.

Even assuming that counsel performed deficiently not moving under a specific state procedural rule for a competency hearing, Melvin shows no prejudice. He cites neither facts nor evidence raising a legitimate doubt about the restoration of his competency. Melvin establishes no reasonable probability that another psychological evaluation would have resulted in a finding of incompetency to stand trial. *Futch*, 874 F.2d at 1487. Absent a showing of prejudice, Melvin cannot obtain relief because *Strickland's* requirements remain unsatisfied. Melvin fails to meet his burden

of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting ground three.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Four**

Melvin claims that state witness Jutaurio Clemons was housed with him in the same unit at the jail.  Clemons testified at trial that while he and Melvin were in the jail together Melvin admitted the crimes.  Melvin claims that Marquis Haynes would have testified that he "stole[] [Melvin]'s discovery" and gave the material to Clemons.  Melvin alleges that if Haynes had testified the jury would have learned of "Clemons's plan to obtain a reduction in the prison sentence that he was to serve." (Doc. 1, p. 13)  Melvin argues that "once it became clear that . . . Clemons planned to testify against [Melvin] for leniency, counsel should have prepared Mr. Ha[y]nes to rebut . . . Clemons['s] testimony.  (Doc. 1, p. 14)  Melvin contends that his trial counsel rendered ineffective assistance by not calling Marquis Haynes as a witness at trial.

The state post-conviction court denied this ground in Melvin's Rule 3.850 motion (Respondent's Exhibit 9, pp. 2–4) (court's record citations omitted):

> [T]he Defendant alleges that counsel was ineffective for failing to call a witness. Specifically, the Defendant alleges that Mr. Marquiz Haynes would have testified that State's witness Jutaurio Clemons fabricated his testimony that the Defendant admitted to committing the offenses. Mr. Haynes would have testified that while in custody of the Pinellas County Jail preceding trial he stole the Defendant's "discovery" and provided it to Mr. Clemons in an attempt to "obtain leniency for himself." The Defendant complains that because neither the Defendant nor Mr. Haynes testified at trial, that the jury was allowed to believe the false confession. The Defendant asserts that Mr. Haynes was available to testify at trial.

In order to allege a facially sufficient claim of ineffective assistance of counsel for failure to investigate and interview a witness, the claim must (1) state the identity of the witness; (2) the substance of the witness['s] testimony; (3) an explanation of how the omission of this testimony prejudiced the outcome of the case; and (4) assert that the witness was available to testify at a trial. *See Nelson v. State*, 875 So. 2d 579 (Fla. 2004). The Defendant has stated a facially sufficient claim.

The record reflects that counsel explored the idea of calling Haynes as a witness when he learned of his identity and possible testimony on the third day of trial. Counsel brought Haynes'[s] identity to the attention of the Court and the State. However, as counsel explained, he needed to speak with Haynes to learn what his testimony would be. Therefore, the next morning Haynes was deposed. Haynes testified that he had heard from someone else that the Defendant and Clemons had been in a fight over Clemons "stealing [the Defendant's] law work or whatever." At first Haynes did not recall the name of the person that told him about the fight, but then remembered it was Tyree Gland. Haynes did not know when he had heard about the fight, but it was not "recently." Upon further questioning, Haynes acknowledged that "I can't really say he stole it, but I know he had some of his papers up in the room." Haynes explained that he saw a piece of paper [o]n Clemons'[s] mattress with the Defendant's name on it, but he did not know if it was from a police report or from discovery. During his deposition, Haynes also testified that he saw a letter from Clemons to the State, which he read, but that he did not read the piece of paper with the Defendant's name typed on it. Therefore, in light of the foregoing, the deposition testimony of Haynes refutes the testimony the Defendant alleges that Haynes would have provided at trial.

Moreover, the Defendant has failed to establish deficient performance. Haynes'[s] deposition testimony reflects that he did not have personal knowledge of any papers in Clemons'[s] possession, nor did he have personal knowledge as to the reason Clemons decided to come forward as a witness, nor did he have any personal knowledge of any relevant facts regarding the charges. Any testimony that the Defendant asserts Haynes would have provided would have been speculation, based on hearsay, and would have been inadmissible. *See* § 90.604, Fla. Stat. (2006) ("[A] witness may not testify to a matter unless evidence is introduced which is sufficient to support a finding that the witness has personal knowledge of the matter."); *see also* § 90.802; *Rivera v. State*, 859 So. 2d 495, 507 (Fla. 2003). Therefore, Clemons would

- 22 -

not have provided any admissible or relevant testimony at trial.
Consequently, counsel cannot be deemed deficient for failing to
call a witness that could not have provided any admissible or
relevant testimony. *See Owens v. State*, 986 So. 2d 534, 546 (Fla.
2008) ("Trial counsel cannot be deemed ineffective for failing to
present inadmissible evidence.") (citing *Pietri v. State*, 885 So. 2d
245, 254 (Fla. 2004)); *see also Evans v. State*, 995 So. 2d 933, 944
(Fla. 2008).

Additionally, the Defendant has failed to establish that he was
prejudiced by counsel's performance. As demonstrated above,
Haynes'[s] deposition testimony indicates that Haynes would not
have been able to provide any admissible or relevant testimony.
Therefore, his inadmissible testimony would have had no impact
upon the outcome of the trial.

As to the Defendant's claim that Haynes would have testified
that Clemons'[s] intent was to obtain a reduction in the prison
sentence, this testimony would not have affected the outcome
of the trial. As noted above, Haynes did not have personal
knowledge of Clemons'[s] desire to secure a reduced prison
sentence and could not have testified to Clemons'[s] intentions.
Nonetheless, during trial Clemons testified that he had been
sentenced to 200 months in prison in a federal case. He testified
that he had not been promised anything for his testimony, but
Clemons wanted the State to let his attorney know that he was
cooperative. This testimony evidences that Clemons was not
promised anything for his testimony, only that he wanted the
State to relay his cooperation in regards to his federal case.
Therefore, during deliberations the jury was aware of Clemons'[s]
request that his cooperation assist him in his own case. Any
additional testimony from Haynes would not have made a
difference in the outcome of this case as the jury knew of this fact
and any additional testimony as to Clemons'[s] intentions would
have been cumulative. *See Lynch v. State*, 2 So. 3d 47, 71
(Fla. 2008); *See also Solarzano v. State*, 25 So. 3d 19, 26 (Fla. 2d
DCA 2009). Therefore, as [this ground] is refuted from the face of
the record, and the Defendant fails to establish either deficient
performance or prejudice, this claim is denied.

Melvin presents no evidence showing that Haynes would have testified at trial

as Melvin hypothesizes. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)

("[E]vidence about the testimony of a putative witness must generally be presented in

the form of actual testimony by the witness or an affidavit.  A defendant cannot

simply state that the testimony would have been favorable; self-serving speculation

will not sustain an ineffective assistance claim.") (footnotes omitted).  Melvin does

not establish that trial counsel's performance fell outside the bounds of reasonable

professional judgment.  *See Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995)

(*en banc*) ("[W]hich witnesses, if any, to call, and when to call them, is the epitome of

a strategic decision.").  Moreover, both the state post-conviction court in rejecting

this ground of ineffective assistance of counsel and the state district court of appeal in

affirming that rejection have answered the question of what would have happened if

counsel had called Haynes to testify at trial.  *See Herring v. Sec'y Dep't of Corr.*, 397

F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told

us how the issues would have been resolved under state law had [the applicant's

counsel] done what [the applicant] argues he should have done . . . . It is a

'fundamental principle that state courts are the final arbiters of state law, and federal

habeas courts should not second-guess them on such matters.'"); *Callahan v. Campbell*,

427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has

already answered the question of what would have happened had [the applicant's

counsel] objected to the introduction of [the applicant's] statements based on [state

law] — the objection would have been overruled . . . . Therefore, [the applicant's

counsel] was not ineffective for failing to make that objection.").

     Melvin fails to support his speculative contention that Haynes's testimony

would have both undermined Clemons's testimony and changed the outcome of the

trial.  Melvin fails to meet his burden of proving that the state court either

unreasonably applied *Strickland* or unreasonably determined the facts by rejecting

ground four.   28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Five**[3]

Melvin contends that his trial counsel rendered ineffective assistance by not

objecting both before trial and during the prosecutor's closing argument to testimony

about Melvin's gang affiliation.  Melvin claims that counsel knew before trial that

Clemons would testify that Melvin told him that he belonged to a gang called "Childs

Park After Dark."  Melvin alleges that the prosecutor's closing argument highlighting

Melvin's gang affiliation "simply served as evidence of [Melvin]'s . . . character and

propensity to commit crimes" and that counsel's failure to object to the prosecutor's

argument violated Melvin's right to the effective assistance of counsel.

The state post-conviction court denied this ground in Melvin's Rule 3.850

motion (Respondent's Exhibit 9, pp. 4–8) (court's record citations omitted):

> The Defendant next asserts that counsel was ineffective. for
> "failing to object to the defendant's alleged gang affiliation."

---

[3]  In his amended application (Doc. 13) Melvin presents only four grounds for relief. In his memorandum of law (Doc. 1) he presents seven grounds for relief. Melvin does not address whether he abandons in the amended application grounds five, six, and seven alleged in the memorandum. Generously interpreting the amended application and to the extent that the memorandum supports the amended application, grounds five, six, and seven are reviewed on the merits. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (instructing "the district courts to resolve all claims for relief raised in a[n application] for writ of habeas corpus pursuant to 28 U.S.C. § 2254"). *See also Wright v. Sec'y, Fla. Dep't of Corr.*, 581 Fed. App'x 841, 842 (11th Cir. 2014) (finding that the district court did not comply with *Clisby* when the court failed to address a ground of ineffective assistance of counsel raised in the applicant's memorandum of law accompanying his federal habeas application); *Dupree v. Warden*, 715 F.3d 1295, 1299 (11th Cir. 2013) (finding that "two sentences found in the middle of a fifteen-page memorandum attached to [a Section 2254 application]" sufficiently raised an ineffective assistance of counsel claim).

The Defendant states that preceding trial counsel was aware that Mr. Clemons would testify "to receiving information of the defendant being a member of the local street gang Childs Park After Dark (C.P.A.D.)." The Defendant states that Mr. Clemons would testify that the Defendant's gang affiliation "was the cause of the defendant committing the crime[s]." During closing argument, the Defendant argues, the State "mentioned the defendant's affiliation" and argued that the gang affiliation "had given the defendant no right to kill." The Defendant complains that Mr. Clemons'[s] testimony that the Defendant was "involved in a neighborhood street gang was prejudicial to the defendant's case" as "street gangs are commonly involved in criminal activities and thought . . . to commit senseless violence." The Defendant asserts that the State admitted that the crime had nothing to do with the defendant's gang affiliation and mentioned the alleged gang activity merely to demonstrate the "defendant's bad character and propensity to commit crimes." The Defendant complains that counsel was ineffective for failing to object to any mention of the "alleged gang affiliation," or "move[] for a mistrial following that objection," or "[at] least made a request for curative instructions."

Having reviewed the record, it is evident that counsel had no basis to object. Evidence of gang affiliation is admissible when it is relevant to show motive or intent. *See Millan v. State*, 932 So. 2d 557, 558 (Fla. 3d DCA 2006); *see also Laflipe v. State*, 888 So. 2d 104, 105–06 (Fla. 3d DCA 2004); *Reyes v. State*, 783 So. 2d 1129 (Fla. 3d DCA 2001); *State v. DiGuilio*, 491 So. 2d 1129 (Fla. 1986).

The evidence presented at trial established that the Defendant's gang affiliation was necessary to establish the Defendant's intent in shooting the victims in this case. On May 11, 2006, the Defendant was a passenger in a Dodge Durango driving in the Citrus Grove area. Carlton Dixon, Michael Smith, Ricco Anderson, and Phil Peterson were walking home from a convenience store when the Dodge SUV began driving towards the group. As the vehicle approached the group, the individuals inside of the car began yelling at Peterson. Dixon described the yelling as conveying an angry tone, with the vehicle's passengers yelling "Childs Park" at Peterson. Peterson used to live in Childs Park, but at the time of the offense, he resided in Citrus Grove. The testimony demonstrated that there was an ongoing feud between Citrus Grove and Childs Park, and Peterson had a history of problems with the Defendant.

After the SUV drove past Peterson and his compatriots, Peterson threw a Capri Sun drink at the Dodge Durango. In response, the Defendant exited the Durango and began arguing with Peterson. While arguing with Peterson, the Defendant removed his shirt and stated that he would return with his gun.

Dixon, Peterson, Smith, and Anderson then proceeded to walk back to the apartment complex. Minutes later, the Durango returned and the Defendant was observed shooting out of the passenger side of the vehicle. One of the bullets struck the hat worn by Peterson and another struck and killed Smith. At trial, multiple witnesses testified that no one in the Citrus Grove group (Dixon, Peterson, Smith, and Anderson) possessed a gun or threatened anyone with a gun.

Juantario Clemens testified that he was playing cards with the Defendant while in jail and during their card game began discussing tattoos. Clemons inquired of the Defendant's "CPAD" tattoo. The Defendant explained to Clemons that "CPAD" stands for "Childs Park After Dark" and that it was "something like a local gang." On the date of the shooting, the Defendant told Clemons that he was driving through the Bethel Heights area with some of his friends and that he shot and killed Smith. The Defendant related to Clemons that the shooting started because Childs Park After Dark does not get along with Bethel Heights. Clemons testified to the Defendant's admitting to fighting with Peterson and shooting Smith. Clemons stated that the Defendant confessed that if he could do-over the incident, he "would wear a mask and would kill everybody."

After he was arrested, the Defendant was interviewed by Detective Noodwang. Post-*Miranda* the Defendant provided different versions of the events leading up to the shooting. The Defendant first stated that he was not in town on the date of the incident. However, he later changed his story and explained that he was in a vehicle on the date of the offense in Citrus Grove with Darius Walker, an individual named Joe, and a fourth individual whose name he did not know. The Defendant explained that while they were driving around, he saw Peterson and began arguing with him. The Defendant stated that he did not get along with Peterson because Peterson used to be part of the Childs Park group, but on the date of the offense he had switched allegiances to the Citrus Grove group. The Defendant further explained that on the date of the offense, he began yelling at Peterson because he was hanging out in the Citrus Grove neighborhood instead of the Childs Park neighborhood.

- 27 -

Moreover, the Defendant's own witness, Brennan Williams, could not testify about the incident without explaining that the groups from Bethel Heights and Childs Park do not get along and fight solely because they are from two different sides of town. In fact, counsel understood that the Defendant's affiliation with Childs Park and Peterson's association with Citrus Grove were relevant to the motive in this case. In fact, it was part of the Defendant's defense at trial. Counsel argued that Peterson and his friends were identifying the Defendant as the shooter because he was from Childs Park and the two groups did not get along. Counsel also used these affiliations to lend credibility to Williams'[s] testimony, stating that . . . Williams was from Citrus Grove and that he was testifying on behalf of the Defendant, who was from Childs Park.

Therefore, the testimony set forth above, including the Defendant's own post-*Miranda* admissions, establishes that the Defendant's involvement in Childs Park After Dark was not only relevant to show motive and intent, but was also inextricably intertwined with the facts of the charges. The Defendant's own admissions to Clemons and Noodwang were that the entire incident was the result of the two groups not getting along. Therefore, counsel cannot be deemed deficient for failing to raise a meritless objection to introduction of the testimony concerning the Defendant's gang affiliation. *See Millan*, 932 So. 2d at 558; *see also Laflipe*, 888 So. 2d 105–06 (Fla. 3d DCA 2004); *Schoenwetter v. State*, 46 So. 3d 535, 546 (Fla. 2010) ("[c]ounsel cannot be deemed ineffective for failing to make a meritless objection." (quoting *Hitchcock v. State*, 991 So. 2d 337, 361 (Fla. 2008)).

Even if defense counsel was deficient in failing to object, it is unlikely that Clemons'[s] testimony or the State's remarks during closing argument actually affected the outcome of the trial. For instance, in addition to the testimony set forth above, the jury also heard testimony that all of the casings located at the scene of the murder and the casings recovered from the Durango came from the same firearm. In fact, throughout the trial, the Defendant as well as Peterson and the other individuals were all described as belonging to either Childs Park or Citrus Grove. Therefore, there would not have been any bias towards one group or another as all of the individuals involved in the shooting were described as belonging to one of the two groups. Given that several witnesses identified the Defendant as the shooter, the casings at the scene matched casings found inside of the vehicle, and the Defendant admitted to Clemons that he shot and killed Smith, it is unlikely that the comments regarding the Defendant's and the witnesses' affiliations in rival gangs affected the outcome of the trial.

- 28 -

Consequently, the Defendant has failed to demonstrate prejudice. *See Hite v. State*, 718 So. 2d 270, 272 (Fla. 5th DCA 1998) ("The physical evidence and other statements made to the officer and to Hite's brothers were so overwhelming that the introduction of the challenged statement could not have affected the outcome of the trial."). Based upon the foregoing, [this ground] is denied.

Although Melvin's claim of ineffective assistance of counsel is a federal question, his challenge to the admissibility of testimony about his gang affiliation is a state law question. The state court concluded under state rules of evidence that counsel had no basis to object as Melvin suggests. Both the state post-conviction court in rejecting this ground of ineffective assistance of counsel and the state district court of appeal in affirming that rejection have answered the question of what would have happened if counsel had objected to the testimony about Melvin's gang affiliation. *See Herring*, 397 F.3d at 1354–55; *Callahan*, 427 F.3d at 932. A federal habeas court must defer to the state court's interpretation of state law and rules of evidence. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Will v. Sec'y for Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective assistance of counsel claim is a federal constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). Melvin shows neither deficient performance nor resulting prejudice from counsel's failure to object to the gang affiliation

testimony.  *Strickland*, 466 U.S. at 691–92.  This ground warrants no relief because Melvin fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground. 28 U.S.C. § 2254(d)(1), (d)(2).

 **Ground Six**

 Brennan Williams, the defense's only witness, testified at trial that he was with the victim on the day of the shooting and that Melvin was not the shooter. (Respondent's Exhibit 1, Vol. VIII, pp. 474–75, 478–485)  On cross-examination the prosecutor asked Williams (who was in the county jail awaiting trial on unrelated charges) whether the state was prosecuting him "for a bunch of violent crimes." (Respondent's Exhibit 1, Vol. VIII, p. 489)  Melvin argues that "[t]he indication of [Williams] having a bunch of violent crimes pending had only served to show that [Williams] had a propensity to commit violent crimes in order to tarnish [Williams's] credibility through showing bad character, ending all possibilit[y] of [Williams's] testimony being given any credibility."  (Doc. 1, p. 17)  Melvin contends that his trial counsel rendered ineffective assistance by not objecting to the prosecutor's question and by not moving for a mistrial based on prosecutorial misconduct.

 The state post-conviction court denied this ground in Melvin's Rule 3.850 motion (Respondent's Exhibit 9, pp. 8–9) (court's record citations omitted):

> Defendant asserts that counsel was ineffective for "failing to object to [the] State's inflammatory remarks of defense witness'[s] pending charges." Specifically, the Defendant complains that counsel failed to object to the State's cross-examination of defense witness Brennan Williams when he was asked about being

prosecuted for "a bunch of violent crimes." The Defendant complains that the State's questioning "allowed the defense witness to be discredited by improper means," as the witness was not first asked whether he had been "convicted of any number of felonies." The Defendant further alleges that the witness had not been convicted of the crimes referred to by the State.

The record reflects that the State did question the credibility of Williams'[s] testimony and alluded to his bias against the State based on his then-pending charges. Specifically, the State asked Williams whether he was being prosecuted by the State Attorney's Office, for whom he was now testifying against on behalf of the Defendant. The State did not ask Williams the nature of the offenses for which he was being prosecuted, but instead simply asked whether Williams was upset with the State Attorney's Office. Proof of a witness's bias is admissible at trial. *See* § 90.608[, Fla. Stat].

However, even if defense counsel should have objected, the fact that Williams was being prosecuted by the State Attorney's Office did not affect the outcome of the trial. For instance, the jury was already aware of the fact that Williams was in custody at the jail at the time that he was testifying. In fact, the jury first heard of his pending charges on defense counsel's direct examination of Williams. Williams also testified that he became involved in the trial while he was in custody at the Pinellas County Jail and he had heard that the Defendant was going to trial for the shootings.

Additionally, Williams'[s] testimony was, at least in part, damaging to the Defendant. Williams'[s] testimony was inconsistent with the testimony of other witnesses, including the Defendant's post-*Miranda* statements. Williams testified that there were two shootings. The first occurred immediately after Peterson and the Defendant initially argued. According to Williams, the Defendant was getting back into the SUV when another individual, Bam, began shooting. Williams testified that Bam was the individual that fired the bullet through Peterson's hat during the first shooting. The SUV then left the area and returned and once again began firing, at which point Smith was shot and killed. This testimony is in direct conflict with the testimony presented at trial; specifically, the Defendant's claim that an individual named "Joe" was the shooter. The Defendant, along with other witnesses, also claimed that only one shooting occurred. Moreover, the other witnesses all testified that Williams was not present at the scene on the date of the shooting. Therefore, even if counsel had objected to the State's questioning concerning the

> Defendant's being prosecuted by the State Attorney's Office, in light of the evidence introduced at trial as well as the significant inconsistencies in Williams'[s] testimony, it is unlikely that the testimony affected the outcome of trial. *See Hite*, 718 So. 2d at 272. Consequently, [this ground] is denied.

The record supports the state post-conviction court's rejection of this ground. Even assuming deficient performance, Melvin cannot obtain relief because he fails to demonstrate that the outcome of the trial would have been different absent counsel's failure to object to the prosecutor's question. *See Rogers*, 13 F.3d at 386 ("Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is [the applicant]'s to bear, is and is supposed to be a heavy one."). Absent a demonstration of prejudice, Melvin cannot prevail on this claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 691–92. Melvin fails to establish that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Seven**

Melvin contends that his trial counsel rendered ineffective assistance by not objecting to the prosecutor's allegedly improper comments in closing argument. Specifically, Melvin challenges the following statements:

> I submit to you that Brennan Williams is imaginary. He's speculative. . . . They can't create reasonable doubt with some imaginary guy who has some made up story from stuff that he heard in the neighborhood.

Melvin argues that the prosecutor's argument undermined Williams's credibility by

implying that Williams was a "liar."  Melvin alleges that counsel's error rendered the

trial both unreliable and unfair.

The state post-conviction court denied this ground in Melvin's Rule 3.850

motion (Respondent's Exhibit 9, pp. 10–11) (court's record citations omitted):

> Lastly, the Defendant asserts that counsel was ineffective
> for failing to object to improper statements made by the State
> during closing argument. Specifically the Defendant points to
> portion[s] of the State's closing argument in which Mr.
> Williams'[s] testimony was characterized as "imaginary" and
> "made up." The Defendant complains that these statements
> infringed upon the province of the jury because the State, which
> the Defendant describes in his motion as a "witness," cannot give
> "his or her personal view of the credibility of another witness."
>
> "Closing argument is an opportunity for counsel to review
> the evidence and to explicate those inferences which may
> reasonably be drawn from the evidence." *See Merck v. State*,
> 975 So. 2d 1054, 1061 (Fla. 2007). The parties are provided wide
> latitude "so that they may 'advance all legitimate arguments and
> draw logical inferences from the evidence.'" *See Rivera v. State*,
> 840 So. 2d 284, 286 (Fla. 5th DCA 2003) (quoting *McArthur v.
> State*, 801 So. 2d 1037, 1040 (Fla. 5th DCA 2001 )). When
> evaluating a prosecutor's comments during closing argument, the
> remarks "should be reviewed within the context of the closing
> argument as a whole and considered cumulatively within the
> context of the entire record." *Id*. at 287. Consequently, "a
> comment standing alone may be viewed as inappropriate, but
> when considered within the context of the entire closing argument
> and the record, it may be a fair comment." *Id*.
>
> In the . . . response, the State argues that the comments which the
> Defendant uses to support his claim are simply incidences of the
> State highlighting the differences between Williams'[s] testimony
> and every other witness in trial. Additionally, the State argues that
> the emphasis of the State's closing argument was to question
> Williams'[s] credibility. The Court agrees that such comments
> made during closing argument were proper. *See Brown v. State*,
> 11 So. 3d 428, 436 (Fla. 2d DCA 2009) ("[C]omments on the
> weight of the evidence and the credibility of the witnesses in

sexual battery cases are the proper subject of argument by counsel."); *see also Miller v. State*, 926 So. 2d 1243, 1254–55 (Fla. 2006) ("[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence.[")]; *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987) ("When counsel refers to a witness or a defendant as being a 'liar,' and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence. It was for the jury to decide what evidence and testimony was worthy of belief and the prosecutor was merely submitting his view of the evidence to them for consideration."); *Evans v. State*, 838 So. 2d 1090, 1095 (Fla. 2002) ("[The] prosecution was entitled to highlight inconsistencies between Evans'[s] testimony and other evidence in the case and to expose contradictions and improbabilities in Evans'[s] version of events.").

During closing argument, the State argued that Williams did not have an accurate memory of the facts of the case, that it was simply incredible that he came forward four years after the shooting, and that his testimony, aside from being inconsistent with the testimony of other witnesses, was also internally inconsistent. The State discussed multiple examples of inconsistencies; namely, that Williams'[s] testimony was inconsistent with the testimony of other witnesses, including the Defendant's own post-*Miranda* admissions. During the State's second closing argument, the State also discussed how the evidence supported the State's witnesses' version of events, but neither Williams'[s] nor the Defendant's version. The State's comments were merely observations on the evidence introduced at trial and the reasonable inferences that could be drawn from such evidence. When viewed in context, the State's comments were proper and were merely a continuation of the State's discussion of the evidence and its application to the law in the case. Consequently, counsel had no basis to object and the Defendant has failed to demonstrate deficient performance or prejudice. *See Gonzalez v. State*, 990 So. 2d 1017, 1025 (Fla. 2008); *see also Bowles v. State*, 979 So. 2d 182, 194 (Fla. 2008).

However, even if the State's closing argument statements were improper, the Defendant has failed to establish that there is a reasonable probability that the comments affected the verdict. As catalogued above, there was a great deal of evidence introduced at trial which inculpated the Defendant. Additionally, in light of the

> lack of consistency between Williams'[s] testimony and that of the other witnesses, it is dubious that the State's comments affected the verdict. *See Caballero v. State*, 851 So. 2d 655, 660 (Fla. 2003); *see also Lugo v. State*, 2 So. 3d 1, 17 (Fla. 2008). Therefore, as the Defendant has failed to demonstrate either deficient performance on the part of counsel or that he was prejudiced by the State's comments during closing argument, [this ground] is denied.

To prove prosecutorial misconduct Melvin must show that the challenged conduct was both improper and prejudiced his substantial rights.  *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995).  An improper prosecutorial remark compels habeas corpus relief only if the remark is so egregious that the proceeding is rendered fundamentally unfair.  "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *See also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").  *Darden*, 477 U.S. at 181, teaches:

> The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, [643] . . . (1974).  Moreover, the appropriate standard of review in a petition for the writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642 . . . .

*Accord Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (*en banc*) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."), *cert. denied*, 480 U.S. 911 (1987); *United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a

prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

Closing argument is designed to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). While he may not go beyond the evidence presented to the jury, the prosecutor is not limited to a bare recitation of the facts.  The prosecutor may comment on the evidence and express the conclusions he contends the jury should draw from the evidence.  *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984).

The trial judge instructed the jury that the attorneys' arguments were not evidence.  (Respondent's Exhibit 1, Vol. VIII, p. 560)  In the context of the entire trial, the prosecutor's comments, even if improper, neither rendered the trial fundamentally unfair nor infected the trial with such unfairness that the resulting convictions are a denial of due process.  *See Tucker v. Kemp*, 802 F.2d at 1296.  Melvin fails to show that, if counsel had objected successfully to the prosecutor's closing argument, the jury would have acquitted him.  Consequently, Melvin fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground.  28 U.S.C. § 2254(d)(1), (d)(2).

Accordingly, Melvin's application for the writ of habeas corpus (Doc. 13) is **DENIED**.  The clerk must enter a judgment against Melvin and close this action.

**DENIAL OF BOTH A
CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Melvin is not entitled to a certificate of appealability ("COA").  A prisoner

seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's

denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue

a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a

substantial showing of the denial of a constitutional right."  To merit a COA, Melvin

must show that reasonable jurists would find debatable both (1) the merits of the

underlying claims and (2) the procedural issues he seeks to raise.

*See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v.*

*Linahan*, 279 F.3d 926, 935 (11th Cir. 2001).  Because he fails to show that reasonable

jurists would debate either the merits of the claims or the procedural issues, Melvin is

entitled to neither a certificate of appealability nor an appeal *in forma pauperis.*

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in*

*forma pauperis* is **DENIED**.  Melvin must obtain permission from the circuit court to

appeal *in forma pauperis.*

ORDERED in Tampa, Florida, on October 24, 2016.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE